# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>GWN JA KIM,<br><br>       Debtor. | Case No. 10-03364<br>Chapter 7 |
| CLARA MASAOKA,<br><br>       Plaintiff,<br><br> vs.<br><br>GWN JA KIM,<br><br>       Defendant. | Adv. Pro. No. 11-90018<br><br><br><br>Re: Docket No. 1 |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The trial in this adversary proceeding was held on October 1-5 and December 17, 2012. Keith Kiuchi represented plaintiff Clara Masaoka and James Stanton represented defendant Gwn Ja Kim. Based on the evidence, the court makes the following

### **FINDINGS OF FACT:**

1.     Plaintiff Clara Masaoka loaned money on an unsecured basis to defendant Gwn Ja Kim many times over a period of years. Mrs. Kim also guaranteed loans that Mrs. Masaoka made to others. In some cases, Mrs. Masaoka

borrowed the loaned funds from others or obtained them from investment clubs called "tanamoshi." In many cases, the loans bore very high interest rates of three percent or more per month.

2. All or virtually all of the loans were for business purposes. There is no credible evidence that any identifiable portion of the loans were for personal, family, or household purposes.

3. In 2007, Mrs. Kim and her then husband, Moon Dong Min, contacted a company named Woongjin Coway USA, Inc., the U.S. distributor for Korean-made water purifiers, air purifiers, and other products sold under the Coway brand name. Mrs. Kim and Mr. Moon wished to obtain the distributorship rights for Coway products in Hawaii.

4. On January 25, 2008, Mr. Moon and a representative of Woongjin Coway USA, Inc., signed an agreement in principle (subject to formal documentation) which outlined the terms on which Woongjin Coway USA, Inc., would grant a distributorship to "Introductions in Paradise," which was intended to refer to Introductions in Paradise, Inc., a Hawaii corporation owned by Mrs. Kim.

5. On November 20, 2008, Mrs. Kim and Mrs. Masaoka incorporated Coway Hawaii, Inc., a Hawaii corporation. Mrs. Kim and Mrs. Masaoka intended

U.S. Bankruptcy Court - Hawaii   #11-90018   Dkt # 51   Filed  01/09/13   Page 2 of 15

that they would be equal owners of Coway Hawaii, Inc., and that the corporation would own and operate the Coway distributorship.

6. Mrs. Kim testified that she and Mrs. Masaoka agreed that Mrs. Masaoka would only have an interest in a separate business operated by Mrs. Kim called Tiffany Bag and Jewelry, which sold designer handbags and jewelry on a consignment basis. I do not believe this testimony. Among other things, there is no documentary evidence or course of dealing to corroborate it.

7. On February 1, 2009, Mrs. Kim, on behalf of herself, Introductions in Paradise, Inc., and Coway Hawaii, Inc., signed a promissory note in favor of Mrs. Masaoka in the original principal amount of $130,000, with interest at ten percent per annum. This amount included all of Mrs. Kim's then existing debts to Mrs. Masaoka and a fresh loan to finance the Coway business.

8. On the same day, Mrs. Masaoka signed a "confirmation letter" in which she promised that she "will give the permission to Gwn Ja Kim to release/delete/omit my name from Coway Hawaii, Inc., provided that the promissory note dated ____, 2009 is paid in full immediately." The reference was to the promissory note signed that same day. The intention of the parties was that Mrs. Masaoka would relinquish her half ownership of Coway Hawaii, Inc., when her loan was repaid in full.

U.S. Bankruptcy Court - Hawaii   #11-90018   Dkt # 51   Filed  01/09/13   Page 3 of 15

9.      Mrs. Kim testified that Mrs. Masaoka was not supposed to obtain a half ownership interest in the business unless she provided an additional loan of $30,000 (the amount of which was included in the principal amount of the February 1, 2009 promissory note) by the next day, February 2, 2009, and that Mrs. Masaoka did not provide the additional money. I do not believe this testimony. There is no documentary evidence to corroborate it, and the parties' conduct after February 2, 2009, is consistent with Mrs. Masaoka's continued interest in the business.

10.     On October 16, 2009, Mrs. Masaoka's attorney formally demanded payment of the February 1, 2009, promissory note.

11.     On October 20, 2009, Mr. Moon incorporated Woongjin Coway, Inc., a Hawaii corporation. He apparently purported to transfer the Coway distributorship to the new company, although the date on which he did so is unclear.

12.     The purported transfer of the Coway business to Woongjin Coway, Inc., was made for the purpose of frustrating Mrs. Masaoka's claims as a creditor of Mrs. Kim and Coway Hawaii, Inc. It is no coincidence that Mr. Moon formed the new company only days after Mrs. Masaoka's attorney sent Mrs. Kim a formal demand for repayment of the promissory note. There is no other plausible

U.S. Bankruptcy Court - Hawaii   #11-90018   Dkt # 51   Filed 01/09/13   Page 4 of 15

explanation for the purpose of the putative transfer.

13. The Coway business in Hawaii was probably never profitable. By October 2009, Coway Hawaii, Inc., owed Woongjin Coway USA, Inc., over $70,000 for Coway goods purchased between April and September 2009. Coway Hawaii, Inc., would not have fallen behind in paying its principal supplier if Coway Hawaii, Inc., were profitable.

14. On July 16, 2010, Woongjin Coway USA, Inc., and "Coway Hawaii" or "Hawaii Coway" signed the formal distributorship agreement. "Coway Hawaii" and "Hawaii Coway" were intended to refer to Coway Hawaii, Inc.

15. On the same day, Woongjin Coway USA, Inc., and "Woongjin Coway – Hawaii" signed a separate agreement. It is unclear whether "Woongjin Coway – Hawaii" was intended to refer to Coway Hawaii, Inc., or Woongjin Coway, Inc. "Woongjin Coway – Hawaii" acknowledged that it owed Woongjin Coway USA, Inc., $175,380.88 as of that date, that it would adhere to a payment plan, and that new orders would be shipped on a COD basis. This is further evidence of the financial distress and unprofitability of the Coway business in Hawaii.

16. Subsequently (the record does not reveal the date), Woongjin Coway USA, Inc., stopped shipping products to the Hawaii Coway distributor.

U.S. Bankruptcy Court - Hawaii   #11-90018   Dkt # 51   Filed 01/09/13   Page 5 of 15

17.     On September 29, 2011, Mr. Moon and Woongjin Coway Hawaii, Inc. [sic?] sued Woongjin Coway USA, Inc., seeking damages on various theories. Woongjin Coway USA, Inc., removed the case to federal district court, and that court granted Woongjin Coway USA, Inc.'s, motion to compel arbitration and to stay the lawsuit. The arbitration remains pending.

18.     There is no convincing evidence of the value of the Coway distributorship in Hawaii. Mr. Moon's complaint in the district court case alleges that he had obtained an appraisal of the business at $1,508,000 - $1,963,000, but no evidence of the appraisal was offered in this adversary proceeding. Further, such a high value is implausible in light of the business' unprofitability. Because the Coway distributorship was the primary (or perhaps only) asset of Coway Hawaii, Inc., there is insufficient evidence to establish the value of the stock in Coway Hawaii, Inc.

Based on the foregoing findings of fact, the court makes the following

**CONCLUSIONS OF LAW**:

**A.      Jurisdiction**

1.      Mrs. Masaoka's complaint includes three counts. Count I seeks an order requiring the return of assets transferred from Coway Hawaii, Inc., to Woongjin Coway, Inc. Count II seeks a determination that Mrs. Masaoka is

U.S. Bankruptcy Court - Hawaii   #11-90018   Dkt # 51   Filed 01/09/13   Page 6 of 15

entitled to fifty percent of the stock in Coway Hawaii, Inc. Count III seeks a determination that Mrs. Kim's debt to Mrs. Masaoka is nondischargeable;

2. There is no doubt that the court has jurisdiction over Mrs. Masaoka's nondischargeability count, that Count III is a core proceeding in bankruptcy, and that the bankruptcy court has statutory and constitutional jurisdiction to enter a final judgment on Count III.

3. The court does not, however, have jurisdiction over Counts I and II. The bankruptcy court has subject matter jurisdiction over (1) cases under title 11 and civil proceedings (2) arising under title 11, or (3) arising in or (4) related to a case under title 11. 28 U.S.C. §§ 1334, 157. The first and third categories apply to the main bankruptcy case and disputes in that case, not adversary proceedings such as this one. The second category is inapplicable to Counts I and II because the Bankruptcy Code does not provide the rule of decision. Counts I and II are not "related to" proceedings because the outcome will not affect the bankruptcy estate; the main bankruptcy case has been closed, which means that all of the estate's property, including whatever interest the estate had in the stock of Coway Hawaii, Inc., has been abandoned to Mrs. Kim.

4. Further, Woongjin Coway, Inc., is, and Mr. Moon may be, necessary or indispensable parties with respect to Counts I and II, but they have not been

7

joined.

5. Therefore, I will dismiss Count I and II of Mrs. Masaoka's complaint for lack of subject matter jurisdiction.

**B.  Amount of Debt**

6. Mrs. Kim argues that Mrs. Masaoka's loans were usurious. Hawaii law applies interest rate limits only to "consumer credit transactions," "home business loans," and "credit card agreements." Haw. Rev. Stat. § 478-5. Mrs. Kim's debts to Mrs. Masaoka do not fall within any of these categories. Id. 478-1. Therefore, usury is not an issue.

7. There is a dispute about whether Mrs. Kim paid some of the debt. In view of my disposition of the complaint, I need not resolve this dispute.

**C.  General Standards for Nondischargeability**

8. Mrs. Masaoka contends that her claims against Mrs. Kim are not dischargeable under sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.

9. Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor. Snoke v. Riso (In re Riso), 978 F.2d 1151, 1154 (9th Cir. 1992); see also National Union Fire Insurance Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 300 (2d Cir. 1996); Meyer v. Rigdon,

8

36 F.3d 1375, 1385 (7th Cir. 1994).

10. The plaintiff seeking to establish an exception to the discharge bears the burden of proof. Fed. R. Bankr. P. 4005; see also In re Niles, 106 F.3d 1456, 1464-65 (9th Cir. 1997). The plaintiff must meet this burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991); Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

**D.    Section 523(a)(2)(A)**

11. Section 523(a)(2)(A) of the Bankruptcy Code provides:

A discharge under . . . this title does not discharge an individual debtor from any debt -

\* \* \*

> (2)    for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by -
>
> (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a); see also Cohen v. de la Cruz, 523 U.S. 213, 218-22 (1998).

12. To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements:

(1)    misrepresentation, fraudulent omission or deceptive conduct by

9

36 F.3d 1375, 1385 (7th Cir. 1994).

10. The plaintiff seeking to establish an exception to the discharge bears the burden of proof. Fed. R. Bankr. P. 4005; see also In re Niles, 106 F.3d 1456, 1464-65 (9th Cir. 1997). The plaintiff must meet this burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 286 (1991); Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

**D.    Section 523(a)(2)(A)**

11. Section 523(a)(2)(A) of the Bankruptcy Code provides:

A discharge under . . . this title does not discharge an individual debtor from any debt -

\* \* \*

> (2)    for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by -
>
> (A)    false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a); see also Cohen v. de la Cruz, 523 U.S. 213, 218-22 (1998).

12. To prevail on a claim under § 523(a)(2)(A), a creditor must demonstrate five elements:

(1)    misrepresentation, fraudulent omission or deceptive conduct by

9

> the debtor;
>
> (2)  knowledge of the falsity or deceptiveness of his statement or conduct;
>
> (3)  an intent to deceive;
>
> (4)  justifiable reliance by the creditor on the debtor's statement or conduct; and
>
> (5)  damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In re Weinberg, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009); In re Slyman, 234 F.3d at 1085; Am. Express Travel Related Servs. Co. v. Hashemi (In re Hashemi), 104 F.3d 1122, 1125 (9th Cir. 1996).

13. "[A] promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A)." In re Rubin, 875 F.2d 755, 759 (9th Cir. 1989) (internal quotations omitted).

14. Mrs. Masaoka failed to prove, by a preponderance of the evidence, that Mrs. Kim never intended to carry out her agreement that Mrs. Masaoka would have 50% of the stock of Coway Hawaii, Inc., or that Mrs. Kim made any other actionable misrepresentation to Mrs. Masaoka.

U.S. Bankruptcy Court - Hawaii   #11-90018   Dkt # 51   Filed  01/09/13   Page 10 of 15

E.   Section 523(a)(4)

15.   Section 523(a)(4) prevents discharge of debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Mrs. Masaoka does not allege that Mrs. Kim engaged in embezzlement or larceny.

16.   "Defalcation" as used in section 523(a)(4) means a misappropriation of trust funds or money held in any fiduciary capacity, or the failure to account properly for such funds. Blyler v. Hemmeter (In re Hemmeter), 242 F.3d 1186, 1190 (9th Cir. 2001); In re Lewis, 97 F.3d 1182 (9th Cir. 1996); Woodworking Enters., Inc. v. Baird (In re Baird), 114 B.R. 198 (B.A.P. 9th Cir. 1990). "[T]he essence of defalcation in the context of § 524(a)(4) is a failure to produce funds entrusted to a fiduciary." Id. Intent to defraud is not required; defalcation includes innocent as well as intentional failures. Id.; see also F.D.I.C. v. Jackson, 133 F.3d 694 (9th Cir. 1998) ("[D]efalcation, at least for the purposes of nondischargeability under Section 523(a)(4), includes any behavior by a fiduciary, including innocent, negligent and intentional defaults of fiduciary duty . . . .")

17.   Federal law defines the phrase "fiduciary capacity" as used in section 523(a)(4). Lewis v. Scott (In re Lewis), 97 F.3d 1182, 1185 (9th Cir. 1996). The term "fiduciary" as used in section 523(a)(4) has a narrow meaning. Only

11

relationships arising from express or technical trusts qualify as fiduciary relationships under section 523(a)(4). Id.

> The meaning of 'fiduciary capacity' under section 523(a)(4) is a question of federal law, which has consistently limited this term to express or technical trust relationships. The broad general definition of a fiduciary relationship--one involving confidence, trust and good faith--is inapplicable in the dischargeability context. The debt alleged to be nondischargeable must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract. In addition, the requisite trust relationship must exist prior to and without reference to the act of wrongdoing. This requirement eliminates constructive, resulting or implied trusts.

In re Baird, 114 B.R. at 198. While the definition of "fiduciary capacity" under section 523(a)(4) is governed by federal law, courts must look to state law to determine whether the requisite trust relationship exists. Cal-Micro, Inc. v. Cantrell (In re Cantrell), 329 F.3d 1119, 1126-27 (9th Cir. 2003); see also Ragsdale v. Haller (In re Haller), 780 F.2d 794, 795 (9th Cir. 1986).

18. Mrs. Masaoka did not establish, by a preponderance of the evidence, that Mrs. Kim occupied a fiduciary capacity or engaged in defalcation within the meaning of section 523(a)(4) . None of the agreements between Mrs. Masaoka and Mrs. Kim created a fiduciary relationship. Mrs. Kim's status as a corporate director and officer of Introductions in Paradise, Inc., and Coway Hawaii, Inc., did not create a fiduciary capacity under section 523(a)(4). In re Cantrell, 329 F.3d at

12

1126-27.

**F.    Section 523 (a)(6)**

19.    Section 523(a)(6) renders nondischargeables debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."

20.    In order to establish "willful and malicious injury" under section 523(a)(6), Mrs. Masaoka has the burden of proving both "willful" and "malicious" injury. The malicious injury requirement is separate from the willful injury requirement. Albarran v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008).

21.    "A 'willful' injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Id. (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). Injury caused by recklessness or negligence does not constitute "willful injury." Geiger, 523 U.S. at 60. The injury itself must be "deliberate or intentional." Id. The willful injury requirement is met when the debtor has a subjective intent to inflict injury or believes the injury is substantially certain to result from the conduct.

22.    Circumstantial evidence can support a finding of "willfulness" under

13

section 523(a)(6). The court can infer the requisite intention from the nature, extent, and circumstances of the injury. Nahman v. Jacks (In re Jacks), 266 B.R. 728, 742 (B.A.P. 9th Cir. 2001) ("[S]ubjective intent may be gleaned from objective factors.").

23. Mrs. Masaoka has failed to establish, by a preponderance of the evidence, that Mrs. Kim's conduct respecting the transfer of assets was "willful." The evidence does not establish what role, if any, she had in the transaction. Mr. Moon formed the new company, not Mrs. Kim.

24. A "malicious act" is (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Albarran, 545 F.3d at 706. "Malice may be inferred from the nature of the wrongful act" if it is first established that the act was willful. Ormsby, 591 F.3d at 1207.

25. Similarly, Mrs. Masaoka has failed to establish, by a preponderance of the evidence, a "malicious act" by Mrs. Kim.

26. Section 523(a)(6) excepts from discharge only those injuries, and the resulting damages, which arise from willful and malicious conduct. Mrs. Masaoka has the burden of proving the extent to which her claim arises from willful and malicious conduct, rather then simple negligence or a breach of contract. In re

14

Heckman, 2011 WL 5148975, at *3-4.

27. Even assuming that Mrs. Kim engaged in "willful" and "malicious" conduct, the measure of Mrs. Kim's injury would be the value of the stock in Coway Hawaii, Inc., which she did not receive, and the value of the assets which were transferred to Woongjin Coway, Inc. There is not sufficient evidence to support a finding on either of those points. Therefore, Mrs. Masaoka has failed to carry her burden of proof.

## CONCLUSION

A separate judgment will enter in favor of Mrs. Kim and against Mrs. Masaoka on Count I and dismissing Counts II and III for want of subject matter jurisdiction.



/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 01/09/2013

15

U.S. Bankruptcy Court - Hawaii   #11-90018   Dkt # 51   Filed  01/09/13   Page 15 of 15